**UNITED STATES of America**

**v.**

**Clarence W. BELL.**

**No. 68 CR 538.**

United States District Court
N. D. Illinois, E. D.

Dec. 13, 1968.

Thomas A. Foran, U. S. Atty., L. J. Cohen, Asst. U. S. Atty., for the United States.

Irving Drobny, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Motions of Defendant to Suppress Confession and Physical Evidence

This is a criminal action under 18 U. S.C. § 1709 charging defendant, Clarence W. Bell, an employee of the Post Office, with theft of mail matter. Defendant was arrested by postal inspectors at the Main United States Post Office Building, Chicago, Illinois, on Friday, August 9, 1968. At the time of the arrest, defendant was interrogated by the postal inspectors, apparently made incriminating statements and either turned over or had taken from his person various articles including some allegedly stolen letters. Defendant has moved to suppress said confession and evidence.

The Government, in its brief in opposition to defendant's motions, has stated that defendant's detention at the Post Office Building extended from approximately 5:40 PM until 8:30 PM on the same day when defendant was taken to Chicago Police Headquarters at 11th Street and State Street for further detention. Defendant was arraigned before the United States Commissioner at the United States Courthouse, Chicago, Illinois, on the next morning, August 10, 1968, at approximately 11 AM. Defendant has not challenged the Government's calendar of events and we will accept it for the purpose of ruling on defendant's motions.

Defendant's position is that postal inspectors do not have the authority to make arrests and, consequently, that the inspectors' search and interrogation of defendant were illegal and the evidence and confession unconstitutionally obtained from defendant. A postal inspector's duties and responsibilities are stated in 39 U.S.C. § 3523(a) (2) (C), (K):

"(C) Investigates violation of postal laws, including, but not limited 'to, armed robbery, mailing of bombs, burglary, theft of mail, embezzlements, obscene literature and pictures, and mail fraud.

\*　　\*　　\*　　\*　　\*　　\*

(K) In any criminal investigation, develops evidence, locates witnesses and suspects; *apprehends and effects arrest of postal offenders*, presents facts to United States attorney, and collaborates as required with Federal and State prosecutors in presentation before United States Commissioner, grand jury, and trial court." (Emphasis added.)

Defendant relies heavily on Alexander v. United States, 390 F.2d 101 (5th Cir. 1968). In that case, a conviction for mail theft was reversed when the court held, among other things, that federal law, 39 U.S.C. § 3523(a) (2) (K), did not grant postal inspectors the authority to make arrests and that defendant's arrest was also improper under state (Texas) law.

Without elaboration, a couple of cases have stated that subsection (K) authorizes a postal inspector to make an arrest. In Kelley v. Dunne, 344 F.2d 129 (1st Cir. 1965), it was said:

"Under 39 U.S.C. § 3523(a) (2) (C) and (K) he [a postal inspector] had authority to investigate, develop evidence, locate witnesses, and make arrest." 344 F.2d at 130.

Similarly, in Neggo v. United States, 390 F.2d 609 (9th Cir. 1968) the court considered the contentions of a convicted mail embezzler and said:

"We find that the arrest was lawful. There was probable cause. We hold that postal inspectors were authorized to make the arrest as private citizens under California Penal Code Section 837, and under 39 U.S.C. § 3523(a) (2) (K). The latter section defines duties of a postal inspector." 390 F. 2d at 610.

The *Alexander* decision, upon which defendant heavily relies, discussed the

*Kelley* statement unfavorably. The Fifth Circuit court pointed out that arresting authority was not the central issue in *Kelley*. Moreover, it characterized the statement quoted above as "an occasional iteration," "unanalytical," and therefore "inconclusive" and of "little * * * significance." 390 F.2d at 105. The Fifth Circuit did not, of course, mention the *Neggo* decision which, while decided a month before *Alexander*, was reported a short time afterwards. Referring to *Kelley*, the Fifth Circuit did say that it had found no court to be "so uncritically docile when the point has been in issue." Id. Yet, in *Neggo* the authority to arrest was the only issue and the court unequivocally, if not elaborately, held that a postal inspector has that authority under federal law.

Thus, the First and Ninth Circuits have somewhat easily reached the conclusion that 39 U.S.C. § 3523(a) (2) (K) empowers a postal inspector to make arrests while the Fifth Circuit holds otherwise. We would agree with the Fifth Circuit that there was no real analysis of the relevant statute in *Kelley* or, for that matter in *Neggo*. Yet we must disagree with the Fifth Circuit's conclusion that such lack of analysis precludes a meaningful conclusion as to the validity of a postal inspector's arrest power. That there has been no real examination of this law may only indicate that there was and is no real need for such an exercise. In light of the split of opinion among the circuits, however, it seems best for us to make explicit our understanding of this law.

The *Alexander* decision states that "39 U.S.C. § 3523(a) (2) (C) and (K) cannot justify arrests without warrants by postal inspectors." 390 F.2d at 104. Essentially, the Fifth Circuit suggests that the sections were enacted as part of legislation designed to increase the compensation of postal employees and that the legislation merely described and classified postal duties, but did not create new authority for employees. Id. The court reads 39 U.S.C. § 903, which permits the Postmaster General to authorize a postal inspector to search mailable matter transported illegally, as "clearly indicating that Congress did not intend to vest postal inspectors with arresting powers." Id.

The second line of thought presented by the Fifth Circuit is that the "authorizing" language of § 3523(a) (2) (K) is "weak and ambiguous," unlike other arrest statutes which explicitly state that certain personnel of the Federal Bureau of Investigation and United States marshalls and their deputies may, among other things, "make arrests without warrants." See 18 U.S.C. §§ 3052, 3053. After suggesting that it would be ironic to believe that Congress restricted the F.B.I. while unleashing postal inspectors, the Fifth Circuit proclaimed that the "only plausible explanation of Section 3523" is that the words do not give arrest authority to a postal inspector, but merely allow him to furnish the predicate for others who make the arrest, aiding them in the "arresting process." 390 F.2d at 105.

Most respectfully, we must question the logic and semantics of such an approach. If, as the Fifth Circuit seems to grant, postal inspectors have certain powers with respect to the arresting process, from where are these powers derived? Apparently from Section 3523. Yet, this implies that Section 3523 is not merely a descriptive or classification statute, but an authorizing statute. Accepting, then, that postal inspectors have the power to act and to apprehend and effect the arrest of postal offenders, it becomes necessary to define the scope of that power.

To our minds, a common sense reading of the power to apprehend a postal offender means the power to make an arrest of a postal offender. To apprehend is to take hold of, to "take or seize (a person) by criminal process; to arrest; as, to *apprehend* a thief." Webster's New International Dictionary of the English Language (2d Ed. 1953). Thus, the common understanding of the

power to apprehend someone, at the least, gives rise to another plausible interpretation of Section 3523. Happily, there is a consistency between ordinary usage and legal writing.

" 'Apprehension' is defined as the 'seizure, taking, or arrest of a person on a criminal charge.' The term 'apprehension' is applied exclusively to criminal cases and 'arrest' to both civil and criminal cases. Black's Law Dictionary, 4th edition." People of the State of Colorado v. Maxwell, 125 F. Supp. 18, 22 (D.Col.1954).

See, e. g., cases collected in 3A Words and Phrases for similar judicial constructions. From this we can conclude that it is not only plausible but highly probable that the power to apprehend a postal offender is the power to arrest him.

An analysis of the power to effect arrests reinforces this conclusion. To effect a particular result is to bring to pass or accomplish that result. Webster's New International Dictionary of the English Language (2d Ed. 1953). Standing alone, the power to effect arrest would not necessarily imply the power to make an arrest. However, section 3523(a) (2) (K) provides that a postal inspector may apprehend *and* effect the arrest of postal offender. Linked together in the same clause, we gather that Congress meant that a postal inspector could effect the arrest of a suspect by apprehending, that is, arresting him. Defendant's case, United States v. Helbock, 76 F.Supp. 985, 986 (D.Ore.1948) is not controlling for that decision preceded enactment of 39 U.S.C. § 3523.

■ We share the concern of the Fifth Circuit that the arresting authority should not be vested by inference. But see, United States v. Jones, 204 F. 2d 745, 754 (7th Cir. 1953). However, we do not think that the statute is as oblique as that Circuit would have us believe. Moreover, we know of no principle of law of statutory construction

which requires laws with similar purposes to be cast in a linguistic mold. We venture to say that Congressional legislative draftmen are intelligent, flexible, and creative enough to devise a variety of phrases with which to express a particular Congressional intent.

When other courts avoided the question of a postal inspector's power under federal law to make an arrest, they found it necessary to examine the power of a private citizen to arrest. See, e. g., Wion v. United States, 325 F.2d 420, 423 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964); Ward v. United States, 316 F. 2d 113, 118 (9th Cir. 1963), cert. denied, 375 U.S. 852, 84 S.Ct. 132, 11 L.Ed.2d 89 (1963). Our discussion and holding under 39 U.S.C. § 3523 makes a discussion of the Illinois arrest provisions, 38 I.R. S. § 107–3 unnecessary and improper.

Assuming Illinois law to be applicable, defendant had contended that the postal inspectors failed to bring the defendant before the "nearest and most accessible judge" "without unnecessary delay," 38 I.R.S. § 109–1(a), and, consequently, that the confession and evidence which were obtained must be suppressed. People v. Harper, 36 Ill.2d 398, 223 N.W.2d 841 (1967). Though state law is not applicable, the federal rules of criminal procedure provide a similar standard:

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint of any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States * * *" Rule 5(a), Fed.R.Crim.P.

■ What constitutes unnecessary delay is highly dependent on the facts in each case. Gray v. United States, 394 F.2d 96, 100 (9th Cir. 1968). Courts have rendered inconsistent rulings even in relatively similar situations. In

the instant case, defendant was arrested at the Post Office after the regular working hours of the Commissioner. He was interrogated for approximately three hours and then taken to a local police station where he was held until the next morning when he was arraigned before the Commissioner. In United States v. Taylor, 374 F.2d 753 (7th Cir. 1967), Chicago police arrested Taylor at 2:30 PM. Federal agents took custody at 5:00 PM and informed Taylor of his rights. Taylor was interrogated at a Secret Service office where at approximately 7:30 PM, he signed a written confession. He was taken before the Commissioner on the following day. 374 F.2d at 755. The court held:

> "* * * the unavailability of a Commissioner until the next morning may explain the necessity for delay, and failure to make presentment for that reason does not violate Rule 5(a)." Id. at 757.

United States v. Price, 345 F.2d 256, 262 (2d Cir. 1965), cert. denied, 382 U.S. 949, 86 S.Ct. 404, 15 L.Ed.2d 357 (1966). Neither does the three hour period of questioning by postal inspectors seem improper. See, e. g., United States v. Taylor, 374 F.2d 753 (7th Cir. 1967); Morales-Gomez v. United States, 371 F.2d 432 (10th Cir. 1967); United States v. Swartz, 357 F.2d 322 (4th Cir. 1966); Mohler v. United States, 312 F.2d 228 (7th Cir. 1963).

Defendant has not alleged that the arresting officers failed to warn him of his constitutional rights or that they threatened or abused him. There is no evidence at this stage in the proceedings which indicates that defendant's confession was involuntary.

Under these circumstances, it would be improper for us to sustain defendant's motions to suppress a confession and physical evidence. Cf. United States v. Taylor, 374 F.2d 753 (7th Cir. 1967); Evans v. United States, 325 F.2d 596, 603 (8th Cir. 1963); Gardiner v. United States, 116 U.S.App.D.C. 270, 323 F.2d 275 (1963).

The motions of defendant are denied.