James Earl GREEN *v.* STATE of Arkansas

CA CR 02-320                                                92 S.W.3d 687

Court of Appeals of Arkansas
Division IV
Opinion delivered December 18, 2002

*Julie Jackson*, by: *Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A Pulaski County jury convicted James Earl Green of aggravated robbery and misdemeanor theft of property and sentenced him as a habitual offender to twenty years in the Arkansas Department of Correction. Prior to trial, he moved to suppress his custodial confession, alleging that it was taken in violation of his right to a prompt first appearance pursuant to Ark. R. Crim. P. 8.1 (2002). Mr. Green argues that the suppression was warranted because the police

obtained his confession during an unnecessary delay between his arrest and his first appearance. We find no merit to this argument and affirm.

Mr. Green was arrested after midnight in the early morning hours of November 30, 2000. He was scheduled for a video arraignment at 9:00 a.m. that morning. Records indicate he was being held in the waiting area of the Pulaski County Regional Detention Center, where he would remain until the video arraignment, as early as 5:56 a.m. that morning. At approximately 7:08 a.m., Mr. Green was transported to the North Little Rock Police Department for an interview with Detective Armstrong. Detective Armstrong began the *Miranda* rights waiver of process at 7:35 a.m., and at 7:38 a.m. Mr. Green waived his rights. Mr. Green then gave his preliminary statement to Detective Armstrong. This process took approximately thirty minutes, and at 8:10 a.m. the preliminary statement had been completed, but not yet taped. Detective Armstrong then left the interview room to watch another detective interview Mr. Green's accomplice, and then returned to record the appellant's statement. This recording began at 9:50 a.m. and concluded at 10:01 a.m. After the taped statements were taken from Mr. Green and the co-defendant, the detective walked the two back to the courtroom to see if they could be placed on the docket for arraignment. However, Mr. Green had missed his video arraignment that had been scheduled for 9:00 a.m. that morning. In Mr. Green's absence, the municipal judge determined that there was probable cause for the arrest, set bond, and passed the video arraignment for "that next Tuesday" which was five days after the first scheduled arraignment.

■ Arkansas Rule of Criminal Procedure 8.1 (2002), provides that "an arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." *See also* Ark. Code Ann. § 16-85-201(a) (1987) ("[w]here an arrest is made without a warrant . . . the defendant shall be forthwith taken before the most convenient magistrate of the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate."). When a suspect's first appearance is delayed, incriminating statements taken during the delay will be suppressed only if the

delay is unnecessary, the statement is prejudicial, and the statement is reasonably related to the delay. *Duncan v. State*, 291 Ark. 521, 529-30, 726 S.W.2d 653, 657 (1987).

■ Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. *See Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994). An unnecessary delay may include a deliberate postponement of a first appearance to allow more time to gather evidence, or to obtain an incriminating statement after a series of exculpatory ones. In *Duncan, supra*, the accused was held incommunicado for three days after giving an exculpatory statement, during which time he could have been taken for a first appearance, before giving an incriminating statement. Similarly in *Clay v. State*, 318 Ark. 122, 883 S.W.2d 822, the court found an unnecessary delay where the only reason the accused was not taken by an officer to a first appearance was that the deputy prosecutor instructed him that the first appearance was to be continued to the next court date for further evidence involving this case after the accused gave a series of exculpatory statements. A delay has even been found to be unnecessary where the officers admitted that they did not take the accused for the first appearance because they were collecting evidence, and because they were tired. *Britt v. State*, 334 Ark. 142, 155-57, 974 S.W.2d 436, 442-43 (1998) (discussing *Duncan* and *Clay*).

■ In contrast to these cases, there is no evidence that the delay in this case was deliberate or for the purpose of obtaining an incriminating statement by evading the protections afforded by a first appearance. At the suppression hearing, Detective Armstrong testified that due to the late hour of Mr. Green's arrest, he presumed that Mr. Green was not on the docket for that morning. Mr. Green argues that the detective's representation is suspect because he was a twelve-year veteran of the North Little Rock Police Department and was probably aware of the normal practice of the court to schedule a first appearance the morning following the arrest. A knowledge of the normal practice would in no way contradict the detective's subjective belief that the paperwork from the arrest of the accused would not have been completed in time

for him to be on the docket for that morning. In fact, when the statements were finished, the detective took Mr. Green to inquire whether he could be placed on the docket at that time.

■ Mr. Green was informed of his right to an attorney and his right to remain silent before the statement was taken. He could have requested an attorney or refused to answer questions at any time during his questioning. Yet, he continued to speak voluntarily with the law enforcement officers and never requested counsel. Speculation that he might not have been as forthcoming and cooperative had he first appeared before a judicial officer is not persuasive. *See Arnett v. State*, 342 Ark. 66, 27 S.W.3d 721 (2000).

■ ■ Furthermore, the delay in this case was necessary to record the preliminary confession that Mr. Green had completed almost an hour before his first appearance was scheduled. We find persuasive the reasoning of a Tenth Circuit case where a suspect missed an opportunity to go before a magistrate while his preliminary confession was typewritten. *See Walton v. United States*, 334 F.2d 343, 346-47 (10th Cir. 1964). The court concluded that the delay was "not for the purpose of exacting admissions from him, but to give him an opportunity to complete his voluntary statement." *Id.* at 347. The court added that "[w]e do not believe, under the circumstances which existed here, that investigating officers are required to refuse to permit a detained or arrested person to continue his statement for the purpose of rushing him before a committing magistrate." *Id.* In this case, because Mr. Green had already provided a statement before any delay in appearing before the judge, the delay did not render the statement involuntary. Accordingly, we find no error in the trial court's refusal to suppress the statement, and affirm.

STROUD, C.J., and NEAL, J., agree.