543 P.2d 1138

**STATE of Arizona, Appellee,**

v.

**Ross Lynn SARDO and Richard Thomas Mandell, Appellants.**

**No. 3235.**

Supreme Court of Arizona,
In Banc.

Dec. 19, 1975.

510

Bruce E. Babbitt, Atty. Gen., Phoenix, William Michael Smith, Yuma County Atty., Yuma, for appellee.

James Hamilton Kemper, Derickson & Kemper, Phoenix, Joseph Shemaria, Shemaria, Storie & Schlanger, Los Angeles, Cal., for appellants.

GORDON, Justice:

The appellants, Ross Lynn Sardo and Richard Thomas Mandell, were convicted by the court sitting without a jury of the crime of possession of marijuana for sale. On appeal they contend that the case should be remanded for a voluntariness hearing on the basis of *State v. Crowley,* 111 Ariz. 308, 528 P.2d 834 (1974). In addition they contend the search of the motor home vehicle violated their Fourth Amendment rights to be free from unreasonable searches and seizures. We took jurisdiction of the case pursuant to Rule 47(e)(5), Rules of the Supreme Court. We affirm the judgment.

The facts pertinent to this review are as follows:

On April 9, 1974 an agent of the Drug Enforcement Administration received information from a reliable informant which included the fact that a shipment of a

quantity of marijuana would be smuggled into the United States on that day at the point where the International Boundary fence ends, approximately two miles west of the port of entry at San Luis, Arizona. This same agent later received a broadcast from a fellow agent who confirmed that a vehicle had crossed at that location and was proceeding north into Yuma. This "load car" was under constant surveillance from the time it crossed the border until it was parked in front of the Stardust Hotel in Yuma at approximately 3:00 p. m. At this time the motor home vehicle later ascertained as occupied by appellants was parked in the area of the Stardust Hotel. Mandell left the motor home vehicle and drove the "load" vehicle to the rear of the Stardust Hotel. Mandell and Sardo were then observed opening the trunk of the "load" vehicle. At the same time a narcotics agent for the Yuma County Sheriff was able to see into the trunk and observed what appeared to be a burlap bag and a couple of square packages. A few minutes later Mandell moved the "load" vehicle to the center of the complex. Both the "load" car and the motor home vehicle were moved out of the Stardust Hotel parking area at approximately 7:45 p. m.

The appellants' motor home vehicle was then observed in a vacant lot near the alley across the street from the Stardust Hotel; it was parked with its interior lights on and its curtains open. Sardo was seen moving from the front to the back of the vehicle, and appeared to be carrying or moving something from the front of the vehicle to the rear at least four times in succession. In the meantime, the "load" vehicle had been returned to its original position in front of the Stardust Hotel, and several agents ascertained that the trunk of the "load" vehicle was empty except for some marijuana debris. The motor home vehicle was later moved back to the front parking area of the Stardust Hotel complex.

After another period of surveillance an agent went to the door of the motor home vehicle, represented himself as part of the hotel management and requested the occupants to open the door in order to answer some questions. When the door was opened by Mandell the agent smelled a fairly strong odor of marijuana, immediately identified himself and arrested Mandell and Sardo. In order to ascertain that no one else was present the agent opened the closet and bathroom doors and then sighted the marijuana.

On July 3, 1974 appellants waived jury trial and submitted the issue of guilt to the trial court on a stipulated record. The *Crowley* decision was entered on December 4, 1974. Appellants contend, therefore, that *State v. Crowley,* supra, should apply. This court has held that *State v. Crowley,* supra, is not to be retroactively applied to a judgment and sentence. *State v. Smith,* 112 Ariz. 321, 541 P.2d 918 (1975), hence our inquiry is limited to the question of whether due process was accorded to the appellants when the case was submitted to the trial court on a stipulated record.

*Crowley* requires that it must affirmatively appear in the record that defendants knew the significance and consequences of submitting the case on the basis of the record as well as knowingly and intelligently waiving applicable constitutional rights. Here the court personally addressed the appellants to ascertain whether their waiver of jury trial and "any right that you feel you are giving up" was intelligently and voluntarily made. Further, defendants not only signed the jury trial waiver form, but did so on the advice of counsel. This is shown by the record.

The essential requirement of due process, as delineated by *Crowley,* is that the record must show that the decision to submit the case on the basis of the transcripts of the preliminary hearings was not only freely, intelligently and voluntarily made, but the defendants understood that the entire decision of guilt or innocence was to be made by the court, acting as both the trier of facts and of the law, upon

the submitted record. The record in the instant case is not a silent one. Quite the contrary, the record reflects an extensive and careful inquiry by the court in order to determine that the defendants' decision was made freely, voluntarily and knowingly. This is in accord with due process. The preliminary transcript shows the evidence more than supported a finding of guilt. We deny the request to remand on the basis of *Crowley*.

■ A more difficult question presented is whether the search of the motor home vehicle violated the appellants' Fourth Amendment rights to be free from unreasonable searches and seizures. The search and seizure of the motor home was a warrantless one as was the arrest of the defendants. Searches conducted without a warrant issued upon probable cause are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, at 219, 93 S.Ct. 2041, at 2043, 36 L.Ed.2d 854, at 858 (1973); See *State v. Damon*, 18 Ariz.App. 421, 502 P.2d 1360 (1972).

■ The exception appellee urges us to affirm and the one relied upon by the trial court is the "border search" situation. This we cannot do. We accept appellants' contention that the facts do not bring this case squarely within the philosophy of *United States v. Weil*, 432 F.2d 1320 (9th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971), and *United States v. Markham*, 440 F.2d 1119 (9th Cir. 1971). Though a *Weil* search need not be predicated upon a known border crossing or the functional equivalent; the search must, nevertheless, be in the immediate vicinity of the international boundary. It is true that "[w]hether the car itself crosses the border or merely drives down to the border area to make a pickup has no effect on their [the custom agents'] power [to search] * * *." *United States v. Markham*, supra, at 1122, 1123. How-

ever, we can find no Arizona or federal case in which the search was considered a valid border search if the site of the search was removed in both time and place from the border, and, in addition, neither the vehicle or the person involved had actually crossed the border.

This case, as in *United States v. Majourau*, 474 F.2d 766 (9th Cir. 1973), presents a situation where the motor vehicle searched was remote in both time and place from the border. "It had not recently, or 'just,' crossed the border", *United States v. Majourau*, supra, at 769; in fact the vehicle searched in the instant case had not crossed or approached the border at all.

Though the search cannot be justified as a border search, it does not follow that the search is invalid. Another basis for a warrantless search is the *Carroll*[1] type search based upon probable cause. Such is the situation in this case.

Under the rationale of *Carroll v. United States*, supra, an officer may, when he has probable cause based upon a belief that a motor vehicle contains contraband (or "that which by law is subject to seizure and destruction"), search the vehicle and seize the contraband without a warrant if exigent circumstances are present. *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975). The apparent mobility of a motor vehicle presents a pressing need for a prompt search, i. e. an exigent circumstance. Exigent circumstances will justify the warrantless search of a motor vehicle where probable cause exists to believe that the motor vehicle contains contraband. *State v. Williamson*, 20 Ariz.App. 397, 513 P.2d 686 (1973); See also *State v. Lawson*, 107 Ariz. 603, 491 P.2d 457 (1971).

■ Exigent circumstances are found when "the vehicle can quickly be moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll*, supra, 267 U.S. at 153, 45 S.Ct. at 285, 69 L. Ed. at 551. Such was the situation in the

1. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

instant case. The motor home vehicle, though not traveling on a highway, was occupied, mobile and located in close proximation to several jurisdictions.

However, the mere fact that a motor vehicle is the area to be searched does not mean that the *Carroll* doctrine can be automatically invoked; officers must at least have "probable cause" for believing that the vehicle to be searched contains contraband or illegal merchandise. *State v. McCullar,* 110 Ariz. 427, 520 P.2d 299 (1974).

Probable cause must be measured by the facts and circumstances of each case. See *State v. Cofhlin,* 3 Ariz.App. 182, 412 P.2d 864 (1966). Here we view the facts and circumstances as to whether probable cause exists from the collective knowledge of all the law enforcement agents involved in this operation. *State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974).

Information can be viewed in light of the fact that an officer relied upon his past experiences to interpret the actions of persons he had under surveillance. See *United States v. See,* 505 F.2d 845 (9th Cir. 1954). In the instant case the original information concerning the smuggling operation was obtained from a formerly reliable informant. The information was proven accurate. The two appellants were observed in or around the "load" vehicle after it had illegally entered the United States, were observed examining the contents of the trunk which appeared to contain a burlap sack and bricks of marijuana, and one of the appellants moved the "load vehicle" at least twice. After the agents ascertained the "load" vehicle was empty except for marijuana debris, the appellants were located in the same motor home vehicle which had been in or in near proximity to the "load" vehicle. The appellants remained in the motor home vehicle until an agent knocked on the door. When it was opened the agent detected the smell of marijuana and took appellants into custody. Immediately thereafter the agent searched the motor vehicle home to ascertain wheth-er any other person was inside and, in doing so, came across the marijuana which was located in the bathroom and in plain view.

These facts, as viewed by experienced law enforcement agents familiar with the methods employed by narcotic smugglers, did establish probable cause to believe that the appellants' vehicle was being used to transport seizable contraband prior to the opening of the door of the motor home vehicle.

Appellants urge that the search cannot be justified as reasonable since a warrant was not obtained. In light of the above findings of probable cause and exigent circumstances the contention is not valid even though the law enforcement agents may have had sufficient time to procure a warrant.

As stated by this court in *State v. Benge,* 110 Ariz. 473 at 478, 520 P.2d 843 at 848 (1974):

"For constitutional purposes, there is no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and on the other hand, carrying out an immediate search without a warrant; and that given probable cause to search either course was reasonable under the Fourth Amendment. * * * It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office."

Appellants next urge it is too late for the state to argue that this search should be upheld because it represents the "probable cause with exigent circumstances" exception. We do not agree.

Although counsel for the state and appellants argued on the theory of

border search at the motion to suppress hearing, the trial court denied the motion to suppress, finding that the search of the motor home was a valid border search and also that the officer had probable cause to arrest the appellants. Under the latter theory the trial court was correct in denying suppression. On appeal the trial court's judgment will be affirmed on any grounds which were within the issues. *State v. Forteson*, 8 Ariz.App. 468, 447 P.2d 560 (1968). Further, the trial court's judgment will be affirmed when the correct legal theory is reached even though it was based upon the wrong reasons. *State v. Martin,* 102 Ariz. 142, 426 P.2d 639 (1967).

■ This is a case where "the arrest and search are inextricably intertwined. The officers could neither arrest nor search without probable cause; if they had probable cause, they could do both." *United States v. Kandlis*, 432 F.2d 132 at 135 (9th Cir. 1970). Generally probable cause to arrest and probable cause to search are synonymous. *State v. Raymond*, 21 Ariz.App. 116, 516 P.2d 58 (1973).

■ The test of probable cause to arrest has been stated many times by this court:

"The lawfulness of a warrantless arrest depends upon whether the facts and circumstances within the knowledge of the arresting officer at the time were sufficient to warrant a man of reasonable caution to believe that a felony had been committed by the person arrested." *State v. Edwards*, 111 Ariz. 357 at 360, 529 P.2d 1174, at 1177 (1974). See also *State v. Green*, 111 Ariz. 444, 532 P.2d 506 (1975).

While no single event in this case could sustain a finding of probable cause to arrest, the totality of events made it more probable than not that the agents would find smuggled contraband in the motor home vehicle.

"The succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that

an innocent course of conduct was substantially less likely than a criminal one." *United States v. Patterson*, 492 F.2d 995 at 997 (9th Cir. 1974), cert. denied, 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974).

In light of the collective information of the law enforcement officers involved in this incident we sustain the trial court's factual finding of probable cause to arrest.

■ Appellants next contend that the fruits of the search must be suppressed because the agent who sought admission to the motor vehicle home did so by identifying himself as an employee of the hotel management and not as a law enforcement officer. We do not agree.

This is not a situation where the fruits of the search were instrumentalities of some unrelated crime and were obtained under the pretext or guise of an arrest for a minor traffic violation. The officers did not make an initial arrest for some minor offense in order to make a search for evidence of a more serious offense. See *State v. Miller*, 108 Ariz. 303, 497 P.2d 516 (1972). Any sham or pretext used was to gain entry to a motor vehicle. While most motor vehicles do not present a problem of effecting an entry, this type of mobile home vehicle does. It must be noted here that this was not an entry into a dwelling or home. The line of cases cited by appellant states the law of California in regards to sham entries of dwellings.

The California Supreme Court held that validity of the search cannot lawfully rely upon any facts and information secured by the law enforcement's officers after an entry into a dwelling when the entry was based upon subterfuge. However, when considering the question of the legality of a search or seizure, it also must be determined, whether, prior to their entry, the law enforcement officers had reasonable and probable cause to enter, search and arrest. If, in fact, they had the requisite reasonable and probable cause prior to the entry of the dwelling, the search would be

valid. *People v. Reeves,* 61 Cal.2d 268, 38 Cal.Rptr. 1, 391 P.2d 393 (1964).

The federal line of cases stand for the proposition that entry by subterfuge for the purpose of performing a general search where, before entry, a proper search warrant could have been obtained was illegal. See *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). However, the fact that officers enter by subterfuge has no bearing on the legality of a subsequent search and seizure or arrest under other circumstances. See *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L. Ed.2d 312 (1966); *United States v. Glassel,* 488 F.2d 143 (9th Cir. 1973); *Dickey v. United States,* 332 F.2d 773 (9th Cir. 1964) cert. denied, 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964).

None of the above cases stand for the proposition that an entry into a motor home vehicle gained by subterfuge is illegal if exigent circumstances are present and the officers are possessed of the requisite probable cause to search and arrest, and we decline to so hold.

" * * * [T]he constitutionally proscribed trickery is that in which an officer obtains entry by subterfuge to a place where he has no right to be. *Stratagem in itself is not illegal; it may be used, for example, to gain entry in order to effect a lawful arrest.*" (Emphasis in original.) *People v. Lopez,* 269 Cal.App.2d 461, 74 Cal.Rptr. 740 at 743 (1969).

Exigent circumstances, present in the instant case, gave the officers reasonable grounds to believe that subterfuge in gaining entry into the mobile home was necessary to secure the officers' safety, prevent escape of the suspects, and to preserve the evidence. Subterfuge in gaining entry under these circumstances is not illegal. Cf. *State v. Miller,* 47 N.J. 273, 220 A.2d 409 (1966); Cf. *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6 (1956), cert. denied, 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956).

Lastly, appellants urge that the search incident to the arrest exceeded the scope permitted by *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This contention is also without merit. Even if this search were viewed only as a search incident to arrest the search of the entire motor home vehicle to ascertain whether all persons aboard had been taken into custody would be a reasonable search under the circumstances. "The test of the constitutionality of a search is whether the search was reasonable under the circumstances of the case." *State v. Carroll,* 111 Ariz. 216 at 219, 526 P.2d 1238 at 1241 (1974). The search in the instant case is justifiable as a cursory search for other possible occupants of the mobile home vehicle who could have posed a danger to the law enforcement officers. See *State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975).

As has been stated previously, the warrantless search of a motor vehicle based upon probable cause to believe it contains contraband is legal and the contraband seized is admissible in evidence. *State v. McCullar,* supra.

Judgments affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.